UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THERESA ANN LEDBETTER,        ]
                              ]
    Plaintiff,                ]
                              ]
    vs.                       ]    1:11-CV-191-LSC
                              ]
MICHAEL J. ASTRUE,            ]
Commissioner,                 ]
Social Security Administration,]
                              ]
    Defendant.                ]

MEMORANDUM OF OPINION

## I. Introduction

The plaintiff, Theresa Ann Ledbetter, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Ms. Ledbetter timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. § 405(g), 1383(c)(3).

Ms. Ledbetter was forty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision, has at least a high school education, and is able to communicate in English. (Tr. at 17, 20.) Her past work experience includes

employment as a sewing machine operator. (Tr. at 20.) Ms. Ledbetter claims that she became disabled on September 14, 2006, due to fibromyalgia, chronic fatigue, osteoarthritis, major depressive disorder, and a history of substance abuse. (Tr. at 13.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. § 404.1520(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 404.1520(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments fall within this category, he or she

will be found disabled without further consideration. *Id.* If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Ledbetter "has not been under a disability within the meaning of the Social Security Act from September 14, 2006, through the date of this decision." (Tr. at 11.) He further determined that Ms. Ledbetter has not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. at 13.) According to the ALJ, Ms. Ledbetter's fibromyalgia, chronic fatigue, osteoarthritis, major depressive disorder, and history of

substance abuse are considered "severe" based on the requirements set forth in the regulations. (*Id.*) He also found that her severe impairments neither meet nor medically equal any of the listed impairments in Appendix 1, subpt. P, Regulation No. 4. (*Id.*) The ALJ did not find Ms. Ledbetter's allegations to be totally credible, and he determined that she has the residual functional capacity to perform a full range of light work as defined in 20 C.F.R. § 404.1567(b), with a sit/stand option. (Tr. at 23.)

According to the ALJ, Ms. Ledbetter is unable to perform any of her past relevant work, she is a "younger individual," she has at least a high school education, and is able to communicate in English as those terms are defined by the 20 C.F.R. § 404.1564. (Tr. at 20.) He determined that "[t]ransferability of job skills is not an issue in this case because [Ms. Ledbetter's] past relevant work is unskilled." (*Id.*) The ALJ found that Ms. Ledbetter's age, education, work experience, and residual functional capacity allow her to perform a significant number of jobs such as small products assembler, sorter, and sales attendant/clerk. (Tr. at 21.) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 14, 2006 through the date of this decision." (*Id.*)

## II.   Standard of Review

The Court's role in reviewing claims brought under the Social Security Act is

a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision

reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ms. Ledbetter alleges that the ALJ's decision should be reversed and remanded for two reasons. First, she argues that the ALJ failed to properly evaluate the credibility of her testimony of disabling symptoms. (Doc. 9 at 7.) Second, the Plaintiff contends that the ALJ failed to properly articulate good cause for according little weight to the opinions of the Plaintiff's treating physician. (Doc. 9 at 4.)

### A. Subjective Pain Testimony

Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence. (Doc. 9 at 7.) Specifically, she argues that the ALJ ignored Plaintiff's "longitudinal history of complaints and attempts at relief," and incorrectly analyzed Plaintiff's treatment history and daily activities. (Doc. 9 at 7-9.)

To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a

severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

The ALJ is permitted to discredit Claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "the implication must be obvious to the reviewing court." *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). In *Dyer*, the Eleventh Circuit held that the ALJ properly applied the *Holt* standard when he considered the claimant's daily activities, frequency of his symptoms, and the types and dosages of his medications, to conclude that the claimant's subjective complaints were inconsistent with the medical record. *Id.* at 1212. "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection" which is "not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as

a whole." *Id.* (internal quotations omitted).

In this case, the ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. at 17.) However, the ALJ also found that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." (*Id.*) In making his decision, the ALJ considered the Plaintiff's objective medical history, her treatment history, and her daily activities. (*Id.*)

Plaintiff's primary treating physician, Dr. Russell Ulrich, diagnosed her with fibromyalgia in 2006. (Tr. at 17, 211.) He noted that she had multiple tender points in her upper and lower extremities, and recommended her to a rheumatologist. (Tr. at 211.) Dr. James Ready, a rheumatologist, diagnosed fibromyalgia and osteoarthritis after the lab work and films failed to reveal any arthritic damage or abnormality. (Tr. at 352.) Dr. Ready began treating Plaintiff for fibromyalgia and osteoarthritis. (*Id.*) Plaintiff argues that in making his decision, the ALJ ignored the Plaintiff's "longitudinal history of complaints and attempts at relief." (Doc. 9 at 8.) She then cites to fifteen documented incidences where she complained of pain due to her fibromyalgia. (*Id.*) It should be noted that all of these incidences involved Dr. Ulrich,

whose opinion the ALJ chose to give little weight.[1] (Tr. at 18.) Further, eleven of the fifteen documented incidences took place within the span of one year. (Tr. at 198-215.)

During this same year, Plaintiff was also seeing Dr. Ready, whose findings differ from those of Dr. Ulrich. (Tr. at 352.) While Dr. Ready noted that Plaintiff was "having about the usual level of diffuse aches and pains," he also noted, "Hands and wrists show no activity, good gripping ability. Elbows and shoulders have good motion. Spine is benign. Hips, knees, feet and ankles are okay." (*Id.*) In visits prior to this in 2007, Dr. Ready noted, "Muscoskeletal exam is fairly benign today. Both shoulders are showing full motion. There is a little gingerness in the left shoulder but no particular focal tenderness. The neurological exam is intact." (Tr. 183.) At a later visit, Dr. Ready noted, "Muscoskeletal exam reveals the hands and wrists show no activity. Pretty good gripping ability. Elbows are okay. Shoulders are ginger and there is a lot of trapezius tension. Neck is showing some lateral limitation but the remainder of the spinal column is okay. Hips, knees, feet and ankles are okay today and the neurological exam is intact." (*Id.*) In 2009, Dr. Ready again stated that Plaintiff was "doing fairly well with the medications. She does not report any side-effects." (Tr.

---

[1] The reasons for this are discussed in Part B of this opinion.

at 353.) He also noted that, while symptom-wise, she was having increased fibromyalgia symptoms, her musculoskeletal exam "is fairly benign today; hands and wrists show no activity, good gripping ability; the rest of the joint exam is benign; the neurological exam is intact." (*Id.*)

The ALJ also analyzed Plaintiff's treatment records for fibromyalgia, hypertension, depression and hypercholesterolemia. (Tr. at 18.) The ALJ noted that Dr. Ulrich's and Dr. Ready's treatment records reveal that Plaintiff's impairments were managed by medication. (*Id.*) In 2009, Dr. Ready twice noted that Plaintiff was doing well with her medications and had no side effects. (Tr. at 352-53.) Dr. Ready also noted that Plaintiff was taking Naprosyn only once a day, although she was previously instructed to take it twice a day. (Tr. at 352.) Dr. Ready did, at one point, note that Plaintiff was unable to tolerate any of the agents. (*Id.*) However, he encouraged her to continue with her current regimen. (*Id.*) Dr. Van Hayne, one of the state agency physicians, rated the claimant as being able to perform light work based on the fact that her pharmacy printouts do not support compliance with her medication, which would lessen her symptoms. (Tr. at 19, 280.)

It is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by

substantial evidence. *Savor v. Shalala*, 868 F. Supp. 1363, 1366 (M.D. Fla. 1994.) Despite Plaintiff's frequent complaints to Dr. Ulrich, there is substantial evidence to support the ALJ's conclusion that the Plaintiff's medical history and treatment records do not support her subjective complaints of pain. (Tr. at 20.) *See Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984) ("It was not inconsistent for the [ALJ] to find that [the plaintiff] suffers pain in fact and yet is not so severely impaired as to meet the stringent test for disability imposed by the Act.").

The ALJ also looked to the Plaintiff's daily activities in his credibility determination. While the ALJ cannot use daily activities alone to ascertain whether a claimant is disabled, the ALJ must consider the entire record, including a claimant's activities, to make a finding on credibility. 20 C.F.R. § 416.929(c)(3) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities . . . ."). The Plaintiff stated that she was able to care for her personal needs without assistance, help her husband with meals, make herself light meals, do household chores, including laundry, drive to doctors appointments, read, watch television, and care for her two dogs. (Tr. at 166-173.) Plaintiff argues that her actual testimony is not contrary to the presence of debilitating pain, and that participation in every day activities of short duration do not disqualify her from a disability. (Doc.

9 at 10-11.) However. the ALJ determined that Plaintiff's "described daily activities . . . are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. at 17.)

The Plaintiff also submitted a third party questionnaire completed by her sister. (Tr. at 17.) Although the questionnaire reported that Plaintiff's pain interferes with her daily activities, including her ability to perform tasks, the ALJ found that as a family member of the Plaintiff, the sister did not have the expertise nor motivation to offer an objective functional assessment. (Tr. at 17.)

The objective medical evidence, treatment history, and daily activities support the ALJ's conclusion that the Plaintiff's impairments do not preclude a range of light unskilled work activity with a sit/stand option.

### B.     Weight of the Treating Physician

Plaintiff contends that the ALJ improperly evaluated her treating physician's opinion. (Doc. 9 at 4.) A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a

claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. § 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

In this case, the Plaintiff contends that the ALJ should have given greater weight to a particular opinion of Dr. Russell Ulrich, her primary care physician. (Doc. 9 at 5.) Specifically, Plaintiff asserts that the ALJ should have given controlling weight to Dr. Ulrich's finding that the Plaintiff is "totally and permanently disabled." *Id.* The ALJ gave great weight to Dr. Ulrich's opinion to the extent that it was consistent with the functional limitations noted in the residual functional capacity assessment, but

noted that disability determinations are reserved for the Commissioner under Social Security Regulations. (Tr. at 18.)

Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 416.927(e). Both the ALJ and this Court are interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the Social Security Administration that bears the responsibility for determining whether the claimant is disabled, not the claimant's doctor. *See, e.g.,* 20 C.F.R. § 416.927(e)(1). Therefore, Dr. Ulrich's opinion that the plaintiff is totally and permanently disabled was properly rejected by the ALJ.

In addition, the ALJ properly articulated good cause for giving lesser weight to the portions of Dr. Ulrich's opinion which were inconsistent with the functional limitations noted in the residual functional capacity assessment. In making his

determination, the ALJ considered the Plaintiff's longitudinal record and found that certain portions of Dr. Ulrich's opinion were inconsistent with his own records and were also not consistent with the medical record as a whole. (Tr. at 18.) These are both recognized by the Eleventh Circuit as "good cause" to discredit a treating physician. *See Phillips*, 357 F.3d at 1241.

Dr. Ulrich has been the Plaintiff's primary physician for the past 20 years, and first diagnosed fibromyalgia in 2006. (Tr. at 211.) In 2007, Dr. Ulrich submitted an opinion in response to a request from the Disability Determination Service in which he asserted that the Plaintiff had such great fatigue that she spends much of her time in the bed or sitting in a recliner and that she lacks such stamina that it would take her 2-3 days for her to recover physically from working one day a week. (Tr. at 197.) However, in this same opinion, Dr. Ulrich encouraged the Plaintiff to continue her activities outside of the home in order to prevent stiffness and deconditioning. (Tr. at 197.) The ALJ determined that Dr. Ulrich's opinion regarding Plaintiff's fatigue was inconsistent with his advice that she remain active. (Tr. at 18.) The ALJ noted that Dr. Ulrich's lengthy treatment history with the Plaintiff presents a possibility that he may be sympathetic to her. (Tr. at 19.)

The ALJ also determined that Dr. Ulrich's opinion was inconsistent with the medical record as a whole. (Tr. at 19.) Plaintiff's record contained treatment records from Dr. Ready, Plaintiff's rheumatologist, as well as summaries completed by state agency physicians. (Tr. at 18-19.) In 2009, Dr. Ready noted that Plaintiff was doing well on the medications with no side effects. (Tr. at 353.) Dr. Ready also consistently noted that Plaintiff's muscoskeletal was benign, that she had good gripping ability, and good motion. (Tr. at 183, 185, 323-24, 352.) As discussed previously, the state agency physician, Dr. Hayne, rated the Plaintiff as being able to perform light work. (Tr. at 19.) The ALJ gave great weight to Dr. Ready's opinion and diagnosis to the extent it was consistent with the functional limitations in the residual functional capacity assessment. (Tr. at 19.) The ALJ gave some weight to the state agency assessment because it was supported by the evidence of record. (Tr. at 20.)

The ALJ presented valid reasons for discrediting the treating physician's opinion regarding Plaintiff's disability. Therefore, his reasons for failing to accept the entire opinion of Dr. Ulrich are supported by substantial evidence.

IV. Conclusion.

Upon review of the administrative record, and considering all of Ms. Ledbetter's arguments, the Court finds the Commissioner's decision is supported by

substantial evidence and in accord with the applicable law.  A separate order will be entered.

    Done this 16th day of February 2012.

                                                    L. SCOTT COOGLER
                                      UNITED STATES DISTRICT JUDGE
                                                                167458